IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JASON NEWBERRY, | Cause No. CV 19-50-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER and FINDINGS |
| | AND RECOMMENDATION |
| CINDY McGILLIS-HINER; CONNIE WINNER; DR. REES; DR. HURST; WARDEN LYNN GUYER; REGINALD MICHAEL; and MELISSA SCHARF, | OF U.S. MAGISTRATE JUDGE |
| Defendants. | |

Plaintiff Newberry filed this action on August 5, 2019, alleging violation of his civil rights under 42 U.S.C. § 1983.  He filed an amended complaint on December 19, 2019.  Newberry, a state prisoner proceeding pro se, alleges violation of his Eighth Amendment right to adequate medical care.

Several motions are pending.  The Court has reviewed all submissions through Document 91.

## I.  Overview

The number of motions on file creates a different impression, but Newberry's case is straightforward.  The Court intends to permit two limited amendments to the amended complaint:  Newberry may proceed against Defendant

1

Scharf, and he may add a claim under the Americans with Disabilities Act based on the same facts as one of the alleged Eighth Amendment violations.

With those amendments, Newberry alleges that his back and elbow pain are not adequately controlled because he is not receiving appropriate medications and physical therapy.  These allegations support claims for violation of the Eighth Amendment right to adequate medical care.  He also alleges that he must use a special cushion for sitting and must be placed in a bottom bunk and on the bottom tier of cells.  These allegations support claims for violation of the Eighth Amendment right to adequate medical care and also the Americans with Disabilities Act.

To prove an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs."  *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks and citations omitted).  This test has "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."  *Id.*  Newberry must show that his pain is a serious medical need, that is, that "failure to treat it" amounts to "the unnecessary and wanton infliction" of pain.  *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  He must also show that at least one of the named Defendants was deliberately indifferent to his pain because he or she knew Newberry's pain

was not adequately controlled, knew of available means to control it, and disregarded them.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A person who is "aware of a substantial risk of serious harm . . . may be liable . . . on the basis of either his action or his inaction," *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003), or where he denies, delays, or interferes with medical treatment, *id*.  Courts "need not defer to the judgment of prison doctors or administrators."  *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989).  But "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc).

To prove a claim under the Americans with Disabilities Act, a plaintiff must show "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was . . . denied the benefits of the public entity's services . . . and (4) [the] denial of benefits . . . was by reason of [his] disability."  *McGary v. City of Portland*, 386 F.3d 1289, 1265 (9th Cir. 2004) (internal quotation marks and citations omitted).  In context, Newberry must show that his pain substantially limits his ability to sit, reach a top bunk, or climb stairs and that a defendant's

3

failure to provide reasonable accommodations in the form of bunk- and tier-restrictions and/or a cushion "disproportionately burdens" his experience of prison housing as compared to nondisabled prisoners.  *See, e.g.*, *Rodde v. Bonta*, 357 F.3d 988, 998 (9th Cir. 2004); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996).

## II.  Allegations of the Amended Complaint

The amended complaint alleges that Newberry suffered a back injury in 2009 as a result of slipping on icy steps at the prison.  *See* Am. Compl. (Doc. 6) at 5 ¶ A; *id.* at 17 ¶¶ C–D.  He was released from prison but returned in July 2018. While he was on "fish row," awaiting a decision as to his placement within the prison, he asked Dr. Rees for the spinal epidural that prison medical staff had regularly administered in the past to control his back pain.  Dr. Rees said he would wait until Newberry was released from fish row to general population.  Newberry received an epidural 43 days later.  *See id.* at 5 ¶ A, 15 ¶ 4; Pl. Disclosure Stmt. (Doc. 23) at 1–2 ¶¶ 1–2.[1]  Newberry received additional injections on December 7, 2018, August 15, 2019, and December 12, 2019.[2]  However, Newberry alleges that Dr. Rees refused to permit use of the same medications that had worked for

---

[1]  The disclosure statement is not a pleading, but in some instances it clarifies Newberry's allegations.

[2]  The proposed second amended complaint states that Newberry received an epidural on March 28, 2019.  *See* Prop. Second Am. Compl. (Doc.29-2) at 12.

4

Newberry in the past and, as a result, the epidurals provide adequate pain relief only for days or a few weeks. *See* Am. Compl. at 12, 15–16; Pl. Disclosure Stmt. at 2 ¶¶ 3–5, 6 ¶ 31.

In December 2018, Newberry suffered an injury to his elbow, either from curling weights at the gym, *see* Compl. (Doc. 1) at 7, or because the chair he was sitting in collapsed, *see* Am. Compl. at 10. He went to the infirmary, where he saw Dr. Hurst. Dr. Hurst knew that bending or moving the elbow caused Newberry pain, but he did not order an MRI or X-ray. Newberry's pain continued. In April 2019, an X-ray showed the bone was broken. In May 2019, Dr. Rees told Newberry he would be able to see a bone specialist outside the prison, but Newberry had not seen one at least as of September 2020. Newberry contends that he requires surgery and is suffering as a result of its delay. *See* Am. Compl. at 10; Pl. Disclosure Stmt. at 4–5 ¶¶ 20–21.

Newberry alleges that the medical provider who administered the epidurals, Bryan Bradley,[3] told prison officials in February 2019 that Newberry needed a bottom-bunk and bottom-tier-cell designation and also required a sitting cushion to avoid back pain. Defendant Winner denied these requests. Newberry contends that Winner also interfered with appropriate medical treatment by endorsing Dr.

---

[3] Newberry refers to Bradley as a neurologist. *See* Am. Compl. at 13, 16. Defendants state that he is a certified registered nurse anesthetist. *See* Defs. Disclosure Stmt. (Doc. 24) at 3.

Rees' decision to deny the opiate pain medications and gabapentin that Bradley believed would control Newberry's pain.  *See* Am. Compl. at 5, 12–13.

Newberry also contends that Bradley told Dr. Rees—and Winner, McGillis-Hiner, and Hurst also knew—that Newberry needed surgery "and alternative treatment of some sort," presumably meaning a way to control his pain.  Newberry asserts that these defendants "failed to give me the prescribed treatment for over a year."  Am. Compl. at 15–16.  On November 13, 2019, Bradley recommended back surgery.  *See* Pl. Disclosure Stmt. at 3 ¶ 9.

Newberry also alleges he was denied physical therapy.  *See* Am. Compl. at 6 ¶ 4; Pl. Disclosure Stmt. at 4 ¶ 13.

Based on these events, Newberry alleges that Defendants Rees, Hurst, Winner, and McGillis-Hiner are deliberately indifferent to his serious medical need for pain control and treatment for his back and his elbow.  Newberry also contends that Guyer and Michael, despite being aware of his problems, allowed the other Defendants to continue their deliberate indifference to his pain and need for treatment.  *See* Am. Compl. at 7 ¶ 12, 15 paras. 8–12.

### III.  Plaintiff's Motions

#### A.  Motion to Amend (Doc. 29)

##### 1.  Reply

The Court received and filed Newberry's motion to amend (Doc. 29) on

October 7, 2020.[4]  Defendants responded on October 22 (Doc. 34).[5]  Without

seeking an extension of time, Newberry filed a reply on December 16, 2020 (Doc.

76).  The reply will be stricken as untimely and will not be considered.  *See* D.

Mont. L.R. 7.1(d)(1)(C) (Doc. 13-2 at 20–21).

## 2. Defendant Scharf

Newberry proposes to add Melissa Scharf as a defendant.  She was named in

the original complaint, but the amended complaint did not name her or make any

allegations against her.  Newberry seeks to add her now because "she has returned

to work at the MSP Infirmary."  Mot. (Doc. 29-1) at 1 ¶ 1.  Defendants submit an

affidavit showing that Scharf left Montana State Prison ("MSP") on July 4, 2019,

and returned to work there on September 21, 2020.  *See* Davenport Aff. (Doc. 34-

1) at 2–3 ¶¶ 6–7.  Newberry filed his original complaint on August 5, 2019, and his

amended complaint on December 19, 2019.

The deadline for amending the pleadings was October 14, 2020.  Newberry

filed his motion to amend on October 7.  As the motion is timely, it is governed

---

[4]  Under the prison mailbox rule, Newberry filed the motion on October 1, 2020, *see* Mot.
(Doc. 29) at 2, assuming he gave it to prison authorities for mailing on the day he signed it.  But
the Defendants' time to respond runs from the date the motion was served, that is, the date they
mailed it, which is generally the date it was filed in the Court's record.  *See* Scheduling Order
(Doc. 13) at 9 ¶ II(D); Fed. R. Civ. P. 5(b)(2)(E).  Newberry's replies are due within 14 days of
the filing of the response, plus three days for mailing.  *See* Scheduling Order at 8 ¶ II(B)(6); Fed.
R. Civ. P. 6(d); D. Mont. L.R. 7.1(d)(1)(C).

[5]  Because defense counsel submitted an affidavit showing Scharf is employed at MSP, it
appears they represent her.  If that is incorrect, counsel should promptly advise the Court.

solely by the standard of Federal Rule of Civil Procedure 15.  "The court should

freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The rule is applied "with extreme liberality."  *Owens v. Kaiser Found. Health*

*Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).  Newberry moved to amend two

weeks after Scharf returned to the prison, hardly a lengthy delay.  *See, e.g.*,

*Krupski v. Costa Crociere, S.p.A.*, 560 U.S. 538, 553 (2010).  And any prejudice to

the defense, *see Eminence Capital, LLC, v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th

Cir. 2003) (per curiam), appears minimal.  Scharf was previously a defendant, and

Newberry pleads the same facts and theories against her as against the other

defendants.

Because Newberry does not allege anything new against Scharf, his

allegation against her will be limited to the following:

> The refusal of Melissa Scharf (the Defendent) to authorize the needed
> treatment for Plaintiff's sever back injury and his elbow injury
> delaying for over two (2) years constitutes Deliberate Indifference and
> violated the Plaintiff's Eighth Amendment rights.

Mot. for Am. Pleadings (Doc. 29-1) at 2 ¶ 4.  The other allegations, *see id*. at 1–4

¶¶ 2–20, merely repeat the allegations of the amended complaint and are not

necessary.

In addition, the Court will deem this allegation denied, so that Scharf need

not file a separate answer.  In accordance with the Scheduling Order (Doc. 13), at

1–3, Scharf must disclose relevant information that has not already been disclosed

8

by other defendants and, if she has different views than her codefendants, a
separate disclosure statement.

### 3. Proposed Second Amended Complaint

Newberry also submitted a 26-page proposed second amended complaint
(Doc. 29-2).  The Court previously advised him of what is required to state a claim
on which relief may be granted, *see* Order (Doc. 5) at 13, and explained that an
amended pleading could not "change the nature of this suit by adding new,
unrelated claims," *id*. at 12–13 & n.2.

In the proposed pleading, Newberry mentions the Americans with
Disabilities Act, and he specifies that Defendant Winner failed to provide the
bunk- and tier-restriction orders and a cushion.  *See* Prop. Second Am. Compl.
(Doc. 29-2) at 6–7.  With the liberal construction the Court is required to employ,
*see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), he appears to
contend that his back pain interferes with his ability to sit, sleep, and climb stairs
and that he needed bottom-bunk and bottom-tier-cell designations, as well as a
sitting cushion, to allow him to realize the benefits of housing on an equal basis
with other inmates.  *See* Am. Compl. at 5, 12, 15; 42 U.S.C. §§ 12102(1)(A), 2(A),
12131–12132; *United States v. Georgia*, 546 U.S. 151, 153–54 (2006).  This
allegation presents only a new legal theory, not new or unrelated facts requiring a
new beginning to discovery.  Newberry cannot obtain money damages under the

ADA from Defendant Winner, *see* 42 U.S.C. § 12132, 12131(1); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (no ADA claim against individuals under 42 U.S.C. § 1983); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) (no ADA claim against individuals), but, if he prevails, he may obtain injunctive relief.  This amendment will be allowed, limited to page 6 line 31 through page 7 line 7 of the proposed second amended complaint (Doc. 29-2).  As with Defendant Scharf, the allegation will be deemed denied, and no further pleading will be required.

Newberry also mentions the Occupational Safety and Health Act, discrimination "because of race, age, sexual orientation, [or] religion,"[6] a "Federal Fire Code," obstruction of justice, Montana State Prison procedures, defamation, and even slander of title.  *See, e.g.*, Prop. Second Am. Compl. (Doc. 29-2) at 2–3, 9.  These allegations are conclusory—that is, Newberry simply states that the defendants violated these laws without alleging facts to demonstrate a violation by each defendant.  Newberry thus fails to follow the Court's directive to "provide specific factual allegations" showing "exactly what each defendant did or failed to do" and "how the action or inaction of that defendant is connected to the violation" he asserts.  *See* Order (Doc. 5) at 13.  In addition to raising some claims with

---

[6] Newberry adds "disability" to this list.  The Court believes his claim under the ADA encompasses the allegation of discrimination on the basis of disability.

10

obvious defects, such as untimeliness or lack of standing, Newberry also gestures at "new, unrelated claims," contrary to the Court's directive. *See id.* at 12–13 & n.2; *see also, e.g.*, Prop. Second Am. Compl. (Doc. 29-2) at 2 (accusing Michaels of "allowing his staff to work in unsafe conditions" and referring to failure to investigate "stair and handrail incident" in 2009); *id.* at 5 (alleging that Warden Guyer "allow[ed] his mailroom to open the Plaintiff's legal mail without having the Plaintiff present" and stating "Now let's talk a little about the living conditions here at MSP").

Newberry also refers to his claim under PREA, the Prison Rape Elimination Act. That claim was dismissed because failing to follow the procedures set forth in the Act does not support a cause of action. *See* Order (Doc. 8) at 2; *see also* Findings and Recommendation (Doc. 5) at 2–3; Order (Doc. 5) at 10–11.

Aside from these impermissible allegations, the proposed pleading repeats the amended complaint without improving on it. Leave to file the proposed second amended complaint should be denied. But Newberry may pursue his ADA claim regarding cell and bunk restrictions and a cushion against Defendant Winner.

### 4. Claim Against Transportation Officer

On December 27, 2020, two and a half months after the deadline for amending the pleadings, Newberry moved the Court to "bifurcate" the action because "there are a lot of areas to be covered." Mot. for Relief (Doc. 80) at 1.

One of these areas is Newberry's allegation that he overheard a transportation officer discussing Newberry's medical situation with a treatment provider.  He contends the officer violated the Health Insurance Portability and Accountability Act ("HIPAA")[7] and committed criminal contempt.

This motion is, in effect, another motion to amend the complaint.  It should be denied as untimely and futile.  Newberry cannot press claims for violations of criminal law, *see, e.g.*, 18 U.S.C. §§ 402, 403; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), and he fails to show the officer has appeared before the Court or disobeyed any of its orders, *see, e.g.*, 18 U.S.C. § 401; *United States v. Rrapi*, 175 F.3d 742, 753 (9th Cir. 1999).  HIPAA does not provide a private right of action. *See, e.g.*, *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007).

This motion should be denied.

### 5.  Conclusion:  Second Amended Complaint

In sum, combining the amended complaint with Newberry's claims against Scharf and under the ADA, Newberry alleges that Defendants Rees, Hurst, Winner, McGillis-Hiner, and Scharf are deliberately indifferent to his serious medical need for pain control and treatment for his back and his elbow.  Newberry also contends that Guyer and Michael, despite being aware of his problems,

---

[7]  The Court is not aware of a federal law with the acronym of HIPPA.

allowed the other Defendants to continue their deliberate indifference to his pain and need for treatment.  And Newberry alleges that Winner is liable for violating the ADA because he did not receive a bunk- or tier-restriction or a cushion.

### B.  Motions for Preliminary Injunction (Docs. 25, 42)

On September 23, 2020, Newberry asked the Court require Defendants to administer a spinal epidural containing "Kenalog, Omnipaqun, Midazalan, Fentanyl, and Marcaine."  *See* Mot. for Ex Parte Injunction (Doc. 25) at 4.  (The motion will not be filed ex parte.  *See* Order (Doc. 22) at  2–3.)  On November 9, 2020, he contended that he is "still not getting any treatment for my sever[e] back injury or my right elbow injury."  Mot. for Blister Packs (Doc. 42) at 2 ¶ 12.

A complaint is sufficient if it states a claim on which relief *may* be granted, and Newberry's pleading does that.  But to obtain a preliminary injunction, Newberry cannot merely state a claim.  He must prove his allegations.  Further, "[i]n any civil action with respect to prison conditions," preliminary injunctive relief must, among other things, "be the least intrusive means necessary to correct" the "violation of a federal right."  18 U.S.C. § 3626(a)(2), (a)(1)(B)(ii).[8]  The amended complaint presents the question of whether Defendants' chosen course of

---

[8]  Although it is somewhat unusual to find provisions governing civil litigation in Title 18 of the United States Code, this provision is part of the Prison Litigation Reform Act and applies to federal civil actions filed by state prisoners.  *See, e.g.*, *Brown v. Plata*, 563 U.S. 493, 499–502 (2011).

treatment constitutes deliberate indifference to Newberry's back and elbow injuries.  But Newberry has not yet submitted any evidence supporting his central allegation that he is not receiving treatment adequate to control his pain and that the Defendants know his pain is not under reasonable control.  *See, e.g.*, Reply (Doc. 36) (reiterating allegations and stating Newberry has proof without providing it).  On the other hand, the Defendants *have* presented evidence that Newberry is receiving or has received treatment that includes at least some of the medications he says are withheld from him and that they are working in good faith to address his needs.  *See* Rees Aff. (Doc. 28-1) at 6–8 ¶¶ 17–19 & Exs. A–B (Docs. 28-2, 28-3).  Because Newberry has not yet shown the violation of a federal right, he also cannot show that the preliminary injunction he requests is the least intrusive means to correct it.

Newberry may yet prove his claims to a jury at trial, as he has requested an opportunity to do.  *See* Am. Compl. (Doc. 6) at 1 ("Jury Trial Demanded"); Fed. R. Civ. P. 65(a)(2) ("[T]he court must preserve any party's right to jury trial.").  But his requests for preliminary injunctive relief should be denied for lack of evidentiary support.

### C.  Motions for Restraining Orders (Docs. 27, 35)

Newberry asks the Court to issue restraining orders against "MSP Infirmary Staff," excepting one Jody Cozby, and against Dr. Hurst, Dr. Rees, and a nurse

who is not a party to this action.  He wants no one but Cozby to treat him unless there is an emergency.  *See* Mot. to Cease and Desist (Doc. 27) at 1.  Newberry also claims he "has had sexual advances made towards him," "has been the victim of verbal abuse," and "has now suffered from intemadation and retaliation along with being threatened" by the nurse.  *See* Mot. for Restraining Order (Doc. 35) at 1.  And he claims Drs. Rees and Hurst and their staff have made "numerous threats towards the Plaintiff."  Mot. to Cease and Desist at 1.  These allegations are conclusory.

In the amended complaint, Newberry alleged that he was in the infirmary on May 17, 2019, when Dr. Hurst "came out of a treatment room," "walked over to the 'inmate bathroom,'" opened the door, stopped, "and turned around and 'winked' at [Newberry] in a sexual way."  Am. Compl. at 11.

To the extent this alleged conduct by Dr. Hurst is what Newberry means when he says he "has had sexual advances made towards him," Mot. for Restraining Order at 1, it falls short of a plausible claim showing that Newberry is entitled to some kind of relief, injunctive or otherwise.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dr. Hurst's alleged act is best analogized to mere verbal harassment, which generally does not violate the Eighth Amendment and does not do so here.  *See, e.g.*, *Austin v. Terhune*, 367 F.3d 1167, 1171–72 (9th Cir. 2004); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996).

Newberry offers no other allegations of fact, and no evidence, that could support the relief he seeks. His motions to "cease and desist" and for a restraining order should be denied for lack of evidence that such orders are warranted.

**D.  Motions for Injunctive Relief re: Benadryl** (Doc. 42)

Newberry accuses "MSP Infirmary" of removing his Benadryl blister packs from him in retaliation for his filing of lawsuits. Mot. for Blister Packs (Doc. 42) at 2 ¶ 8. He asserts that "if I go and pick out my Benadryl then the infirmary say's that I am self medicating." *Id*. ¶ 10. Newberry explains that he has free access to muscle relaxants and Cymbalta but must "stand in pill pass line for up to 15 minutes" for a daily or other limited dose of Benadryl, and standing causes him pain. He also complains that some medication is causing him a "dangerous" side effect. *See id*. at 2 ¶ 13, 3 ¶ 15. He asks the Court to "go around to every block and take a survay whether or not these inmates are getting proper and adquat treatment" and to make a report. *See id*. at 3 ¶ 20, para. 21.

These allegations fall outside Newberry's amended complaint. "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC, v. The Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). This motion should be denied.

**E.  Motion for Injunctive Relief re: Outside Expert** (Doc. 53)

Newberry asks the Court to send him "to a spinal institution" not chosen by

Dr. Rees or "Clinical Services," so that he may obtain "the truth and the facts"

about what the correct treatment is.  He believes that this course of action will put

an end to any defense that his treatment is a matter of opinion.  *See* Mot. for

Interim Order (Doc. 53) at 1–2.

Defendants address this request under Federal Rule of Civil Procedure 35,

which authorizes courts to order parties to undergo mental or physical

examinations.  Neither Federal Rule of Civil Procedure 35 nor Federal Rule of

Evidence 706 support a plaintiff's request to have himself examined in an action

alleging deliberate indifference rather than negligence.  *Cf. Berg v. Prison Health

Servs.*, 376 Fed. Appx. 723, 724 (9th Cir. Apr. 19, 2010); Fed. R. App. P. 32.1(a);

9th Cir. R. 36-3(b); *see also* Defs. Resp. (Doc. 65) at 2–3 (citing cases regarding

Rule 35).

The question at issue in this action is not whether the Defendants have

delivered the correct treatment to Newberry.  The question is whether one or more

of the Defendants knew of and disregarded Newberry's pain by providing

treatment they knew would not adequately control it.  *See, e.g.*, *Farmer v.

Brennan*, 511 U.S. 825, 837 (1994); *Colwell v. Bannister*, 763 F.3d 1060, 1066

(9th Cir. 2014).  An outside treatment provider's examination and recommended

course of treatment for Newberry is not likely to prove or disprove what any

17

Defendant subjectively knew or disregarded at the time of Newberry's treatment at MSP.  Because this action concerns deliberate indifference rather than negligence, the law does not support a court-ordered examination of Newberry.

This motion should be denied.

**F.  Motions for Injunctive Relief re: COVID-19** (Docs. 37, 40, 55)

Newberry invites the Court to monitor prison medical staff's implementation of measures recommended by the Centers for Disease Control for controlling the spread of COVID-19.  *See* Mots. (Docs. 37, 40, 55).

Again, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."  *Pac. Radiation Oncology*, 810 F.3d at 633.  This case concerns the treatment of Newberry's back and elbow injuries and does not involve COVID-19.  Moreover, the deadline for amending the pleadings expired two weeks before Newberry filed his first motion for injunctive relief related to COVID-19.  *See, e.g.*, Fed. R. Civ. P. 20(a)(2); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); Scheduling Order (Doc. 13) at 6–7 ¶ 1.

These motions should be denied.

**G.  Motions to Unseal Records** (Docs. 38, 39, 75)

**1.  Replies**

Newberry filed his first two motions to unseal on November 2, 2020.

Defendants responded on November 13, 2020 (Docs. 45, 46). Without seeking an extension of time, Newberry filed replies on December 6, 2020 (Docs. 62, 63). The replies are stricken as untimely and will not be considered. *See* D. Mont. L.R. 7.1(d)(1)(C).

### 2. Merits

Defendants have not yet responded to Newberry's third motion (Doc. 75), but as he has already filed two similar motions, there is no need to await a response.

Newberry asks the Court to unseal cases in Texas, Louisiana, and Montana involving Dr. Rees or Dr. Hurst, *see* Mot. to Unseal (Hurst) (Doc. 38) at 1; Mot. to Unseal (Rees) (Doc. 39) at 1, as well as "any gag orders that these defendent's put on any case's in any court," Mot. to Unseal (Doc. 75) at 1 (caption). Newberry appears to assume the defendants have been found liable in lawsuits filed in this and other courts and had the records sealed.

The relevance of this information is questionable. Regardless, the Court is not aware of any authority that would permit it to order, or even to ask, other courts to review and unseal their records. Newberry cites none. He cites 18 U.S.C. § 270, *see* Mot. to Unseal (Doc. 75) at 1, apparently meaning 18 U.S.C. § 2701. Except that it prohibits the Court from hacking other courts' electronic records, which was unlikely in any case, the statute has no bearing here. The other

cases Newberry cites, *see id*. at 2, discuss courts' sealing of their own records.

Considering Newberry's motions as applied to its own records, this Court honors the strong presumption in favor of public access to both court cases and documents filed in cases. *See, e.g.*, D. Mont. L.R. 1.3(a), 26.4 (Dec. 1, 2019). In applying those rules, the Court follows the law of the Ninth Circuit. *See, e.g.*, *Center for Auto Safety, Inc., v. Chrysler Group, LLC*, 809 F.3d 1092, 1096–99 (9th Cir. 2016); *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025–27 (9th Cir. 2014). The records of this Court include no sealed cases involving any of the Defendants.

These motions will be denied.

**H.  Motions re: Medical Records** (Docs. 41, 52, 71, 74)

Newberry asks the Court to deny the defendants access to his medical records, *see* Mot. in Limine (Doc. 41) at 1–2, and "put a Gag order" on Defendants because they "got into" his medical and mental health records, *see* Mot. for Gag Order (Doc. 71) at 2. He believes the Defendants are accusing him of crimes in the midst of his civil suit, *see id*. at 1, or defaming or slandering him, *id*. at 2. He claims their view of the case shows "racism, discrimination, prejudice and bioizan" and will cause him trouble when he is released, "especially when attending the church of his choice." *Id*. at 2. He refers to three of the Defendants' filings, Docs. 24, 28-1, and 34.

The scheduling order authorized defendants to obtain the plaintiff's medical

20

records.  *See, e.g.*, Scheduling Order (Doc. 13) at 3–4 ¶ I(B)(5).  Newberry

certainly knew of this provision, at the very latest, by August 21, 2020, when he

filed a motion to clarify the Scheduling Order.  *See* Mot. to Clarify (Doc. 20) at 2.

He provides no basis for finding the Defendants have violated HIPAA.  The Court

has reviewed the Defendants' submissions that Newberry mentions, Docs. 24, 28-

1, and 34, and does not perceive anything that could plausibly be seen as

defamatory, discriminatory, or contrary to Newberry's religious liberty.

Newberry asks the Court to order the Defendants to produce Newberry's

own medical records from other providers.  *See* Mot. to Obtain Medical Records

(Doc. 52) at 2.  Defendants have no obligation to obtain evidence from third parties

on Plaintiff's behalf.  As Newberry appears to acknowledge, *see* Reply (Doc. 73)

at 3, he may obtain his own medical records simply by writing to the providers and

requesting them.  *See, e.g.*, Mont. Code Ann. § 50-16-526.

Finally, Newberry asks to "submit records," including medical records, he

has obtained over the past two years.  *See* Pl. Mot. to Submit (Doc. 74) at 1.  Since

Newberry submitted the records without awaiting a ruling on his motion, the Court

can say they consist of 640 pages.  But the Court does not warehouse parties'

exhibits.  Exhibits may be submitted into the record in connection with a motion

only if they are specifically relevant and clearly and individually labelled.  *See* D.

Mont. L.R. 7.2.  Newberry's motion for leave to submit the records will be denied.

The documents will be stricken and will not be considered for any purpose.

## I. Discovery Motions

### 1. Motion for Answers and "No Objections" (Doc. 26)

Newberry asks the Court to order Defendants personally to respond to his discovery requests and "to not allow the Defendent's Attorney's to answer these questions for them." He also refers to an error by the mailroom and his limited access to the internet and case law and asks the Court to prohibit objections to his discovery requests because "if the Defendent's do object . . . this automatically shows guilt and abuse" and amounts to suppressing evidence. *See* Motion for Answers (Doc. 26) at 1 ¶¶ 3–4, 2 ¶¶ 12–15.

The motion is frivolous. Defendants not only may but must object when they believe objections are warranted. *See, e.g.*, Fed. R. Civ. P. 30(c)(2), 33(b)(4). Both parties are entitled to due process. Newberry provides no reason to suspect the Defendants of misunderstanding the rules of discovery, much less violating them. The motion is denied.

### 2. Additional Interrogatories and Requests (Doc. 51)

The Scheduling Order provided that "[a]ll discovery requests shall be served by **November 13, 2020.**" Scheduling Order (Doc. 13) at 7 ¶ II(A)(2) (bold text in original). Newberry moved for leave to serve additional "discovery, admissions, and interrogatories" three days too late, on November 16, 2020. *See* Mot. (Doc.

51) at 1.

Newberry's reply refers to the 200 pages of Defendants' disclosures as nonresponsive and an attempt to confuse him. The number of pages is not excessive in comparison to similar cases. Newberry does not show that the Defendants did not disclose documents "within the[ir] possession, custody, or control." Scheduling Order at 2–3 ¶ I(B)(2). He also fails to explain what additional discovery he needs but cannot obtain within the allotted number of discovery requests. *See id.* at 5 ¶ I(E); Pl. Reply (Doc. 73) at 1–2.

The motion will be denied as untimely and unnecessary. As Defendants are now aware that Newberry believes "medical records, grievances, incident reports, transportation records, and the names of all transportation officers involved in this suit" (presumably meaning the events underlying the suit) may be used to prove his claims, *see* Pl. Reply at 2, they must consider supplemental disclosures, *see* Scheduling Order at 3 ¶ I(B)(4).

### 3. Subpoena Requests (Docs. 57, 77)[9]

*Relevance of Information.* As explained above, the issue in this case is whether any of the Defendants violated Newberry's Eighth Amendment right to

---

[9] Defendants note they intended to attach the affidavit of John Daugherty to their response to Newberry's first motion for subpoenas but mistakenly attached it to another document. *See* Errata (Doc. 78). The clerk will be directed to correct the filing. The Court has reviewed the Daugherty affidavit in connection with Newberry's first motion for subpoenas.

adequate medical care by being deliberately indifferent to a serious medical need to control his pain. Information relating to Dr. Hurst's actions on May 17, 2019, and prison buildings' compliance with the Americans with Disabilities Act are not relevant. *See* Fed. R. Civ. P. 26(b)(1). Motions for evidence or witnesses related to them, *see* Mots. (Docs. 57-3, 57-11), will be denied.

Newberry has not made clear how records produced (or not produced) to the Social Security Administration are relevant to his claims. He also requests a subpoena for cell phone records showing that Newberry's mother frequently called the prison. While these records could corroborate testimony that Newberry's mother called the prison, they are unlikely to corroborate testimony that she discussed her son's medical treatment or, more importantly, that any of the Defendants knew Newberry's pain was not, in fact, adequately controlled. A subpoena for these phone records does not appear "proportional to the needs of the case" in view of their peripheral importance in resolving the issues. *See* Fed. R. Civ. P. 26(b)(1). These motions, *see* Mots. (Docs. 57-12, 57-14), will be denied at this time, but Newberry may refile them if he can establish their relevance.

*Courts' Sealed Records.* The Court is not aware of any authority permitting it to subpoena a court to produce its sealed records. Motions for other courts' sealed records, *see* Mots. (Docs. 57-1, 57-2), will be denied.

*Affidavits or Reports.* The Court is not aware of any authority permitting a

24

party to use a subpoena to compel anyone to prepare an affidavit.  Newberry may

*ask* a non-party to provide an affidavit or answer questions.  He may *compel* a non-

party to appear and testify under oath and on the record at trial, a hearing, or a

deposition.  But he may not blend these approaches by compelling a non-party to

provide an affidavit or report.  To the extent Newberry requests subpoenas to

compel witnesses to provide reports or affidavits, his motions, *see* Mots. (Docs.

57-4, 57-6, 57-7, 57-8, 57-9, 57-10, 77 through 77-17, 77-19 through 77-21),[10] will

be denied.

*Expert Witnesses.*  Newberry states that "Dr. Brian Bradley CRNA, MS,

Neurologist," Kristen Jakubec, Dr. Day, Dr. Martini, Dr. Rantz, Dr. Kohut, and Dr.

Pirinian are "considered" expert witnesses for him.  Provided he disclosed their

names and reports on or before November 13, 2020, *see* Scheduling Order (Doc.

13) at 7 ¶ II(A)(3); Fed. R. Civ. P. 26(a)(2), the Court will also consider them his

expert witnesses.  But a subpoena is inapposite.  The Court cannot compel a

witness to act as an expert, *see* Fed. R. Evid. 706(a), nor, as stated above, to

prepare an affidavit or report.  Newberry's motions for subpoenas for experts, *see*

Mots. (Docs. 57-4, 57-5, 57-6, 57-7, 57-8, 57-9, 57-10), will be denied.

*X-Rays.*  Newberry need not subpoena medical records from "D.O.C.,

---

[10]  Doc. 77-18 is directed to a transportation officer.  It seeks testimony and does not refer
to an affidavit or report of the officer's observations.  Doc. 77-18 also seeks transportation
records, but that request is addressed in Part III(I)(2), above, at 23.

Infirmary," presumably meaning the Montana State Prison infirmary, *see* Mot. (Doc. 57-5) at 1, because Defendants indicate they are producing or have produced medical records in their possession, *see* Defs. Resp. (Doc. 67) at 4.  Newberry appears to believe these records do not include MRI or X-ray images or written reports concerning his medical care by outside providers.  Although it seems he could simply request those records from the treatment providers, he may subpoena them.  He is advised that he may be required to pay for reproductions.  These motions, *see* Mots. (Doc. 57, 57-5), will be granted.

*Elite Paralegal Services.*  Newberry asks the Court to issue a subpoena for trial preparation materials that were erroneously returned to the sender by the prison mailroom. (It appears possible the mail was not permissible "legal mail," because it was not sent by an attorney representing Newberry.)  Newberry is certainly entitled to receive trial materials prepared for him.  A subpoena, however, will not guarantee their delivery.  This motion, *see* Mot. (Doc. 57-13), will be denied.  But defense counsel must ensure that Elite Paralegal Services is able to deliver these materials to Newberry or, if they cannot be delivered, explain why not.

*Testimony from Fact Witnesses.*  Newberry asks the Court to order 21 inmates and one officer "to physically appear in the courtroom" to "give there testimonies, and what they have witnessed" of "the pain and suffering" Newberry

experienced.  *See* Mots. for Subpoena (Docs. 77 through 77-21) (Bauer, Cudd,

Frank, Gerber, Tome, Igneri, Fox, Rose, Cortez, Sieler, Sisk, Hernandez, Manning,

McGill, Doran, O'Shea, McNamara, Colling, Officer Andy, Morrissey, Henry, and

Cook).

Subpoenas are issued to ensure a witness attends a trial, hearing, or

deposition on a specific date and at a specific time and place.  As to depositions,

Newberry moved for subpoenas for these witnesses two days before the close of

discovery.  *See* Scheduling Order (Doc. 13) at 7 ¶ II(A)(4).  He did not give

Defendants appropriate time to respond to the motion, much less for the Court to

rule.  As it is too late, the motion will be denied as to depositions.

If and when the Court sets trial or a contested hearing requiring fact

witnesses' testimony, it will give Newberry an opportunity to request subpoenas.

Pursuant to Federal Rule of Evidence 403, it is unlikely that the Court will issue

subpoenas for 21 witnesses to testify about one or two topics.  He may wish to

consider which witnesses he would prioritize.

At this time, these motions, *see* Mots. (Doc. 77 through 77-21), will be

denied.

### 4.  **Motion to Compel** (Doc. 69)

In a document titled "Motion to Compel," Newberry moves the Court to

"obtain MRI's, X-ray's, Catscan photo's and Incident Reports on the

stairs/handrails, Incident Reports made on staff and sealed cases against all

Defendent's."  Not all of these items are relevant.  Regardless, because Newberry

did not comply with D. Mont. L.R. 26.3(c)(2), the motion will be denied.

**J.  Motion for Summary Judgment** (Doc. 56)

Newberry's motion for summary judgment fails to comply with D. Mont.

L.R. 56.1(a)(1)–(3).  He filed the motion on December 2, 2020.  He did not file a

document purporting to be a Statement of Undisputed Facts until December 31,

2020 (Doc. 87).  The Statement was not filed "simultaneously" with the motion

and also fails to meet the requirements of L.R. 56.1(a)(1)–(3).  The "motion to

amend summary judgment," filed on December 31 (Doc. 86), replies to

Defendants' response and does not cure the defects of the Statement.

The motion for summary judgment should be denied.  If he complies with

the rules, Newberry may file another motion for summary judgment on or before

the pretrial motions deadline.

The Court will suspend Local Rule 56.1(a)(4).  The parties need not comply

with it.

**K.  Response to Defendants' Disclosure Statement** (Doc. 64)

Nearly three months after Defendants filed their disclosure statement (Doc.

24), Newberry filed a response to it (Doc. 64).  A disclosure statement merely

conveys what one party believes to be relevant information and evidence.  A

28

response is neither required nor permitted and will be stricken from the record.

### L.  Motion to File Opening Brief (Doc. 70)

Newberry requests leave to file an "opening brief."  *See* Mot. for Opening Br. (Doc. 70).  The Court has not required and does not need the brief.  Plaintiff may make whatever notes he wishes to prepare for trial.  Leave to file the brief will be denied.

## IV.  Plaintiff's Future Submissions

Newberry occasionally refers to defense counsel by his first name and purports to address him and defendants personally.  *See, e.g.*, Reply re: Mot. for Prelim. Injunction (Doc. 36) at 2–3.  Newberry will discontinue this practice.

## V.  Defendants' Motion to Vacate Deadlines

On November 18, 2020, Defendants moved to amend the Scheduling Order. Newberry does not oppose the motion.  Defendants state that the current deadline for pretrial motions is December 18, 2020.  *See* Mot. to Amend (Doc. 49) at 2.  It is actually January 15, 2021.  *See* Scheduling Order (Doc. 13) at 7 ¶ II(A)(6).

Defendants' November 18 motion also asks that the deadline be vacated and reset "after the Court issues its Order on Plaintiff's 'Motion for Amended Ex Parte Injunction of Time' (Doc. 31)."  In that motion, Newberry asked the Court to extend his time to reply in support of his (second) motion for an ex parte injunction (Doc. 25).  The Court granted an extension on October 19, 2020.  *See* Order (Doc.

29

32).  And Newberry filed his reply on October 23, 2020 (Doc. 36).

Defendants are correct that Newberry moved to amend his complaint.  But motions generally do not require vacation of deadlines.  The Scheduling Order and the rules of procedure and evidence gave both parties clear guidance as to the Court's expectations.

Discovery is now closed.  Solely to accommodate the parties, the Court will grant a brief extension of the deadline for dispositive motions and, if none are filed, preparation of a final pretrial order.  *See* Scheduling Order (Doc. 13) at 7–8 ¶ II(A)(6)–(7).

Based on the foregoing, the Court enters the following:

### ORDER

1.  As Newberry believes "medical records, grievances, incident reports, transportation records, and the names of all transportation officers involved in this suit" may be used to prove his claims, *see* Pl. Reply (Doc. 73) at 2; Pl. Mot. for Subpoena (Doc. 77-17 (Officer Andy)), Defendants shall make any necessary supplemental disclosures on or before **January 20, 2021**.

2.  Defense counsel must take appropriate steps to ensure Elite Paralegal Services is able to deliver Newberry's trial preparation materials to him on or before **January 20, 2021**.  If those materials cannot be timely delivered to Newberry, defense counsel must tell the Court why.  Mailroom staff may carry out

the standard security inspection.  Staff may not disclose the contents of the materials to anyone but may disclose the outcome of the inspection to defense counsel.

3.  Newberry's reply in support of his motion to amend (Doc. 76) is **STRICKEN** as untimely.

4.  Correlative to paragraph 1 of the following Recommendation, Newberry's motion to amend (Doc. 29) is **GRANTED IN PART**.

a.  The request to add Defendant Melissa Scharf (Doc. 29-1) is **GRANTED**, limited to the allegation at page 2, paragraph 4, of the Motion for Amended Pleadings (Doc. 29-1).  The allegation is **DEEMED DENIED**.

b.  The request to add an ADA claim is GRANTED, limited to the allegation against Defendant Winner from page 6 line 31 through page 7 line 7 of the proposed second amended complaint (Doc. 29-2).  The allegation is **DEEMED DENIED**.

c.  No further pleading is required.

5.  Newberry's motion to amend is also **GRANTED** with respect to a claim under the Americans with Disabilities Act.  All defendants shall file an answer, and may choose to file a simple general denial, on or before **January 20, 2021**.

6.  On or before **February 5, 2021**, Defendant Scharf must comply with ¶

31

I(A) and (B) of the Scheduling Order (Doc. 13) to the extent her position varies from her codefendants or she has information that they have not already disclosed. Also on or before **February 5, 2021**, all Defendants must comply with ¶ I(A) and (B) of the Scheduling Order with reference to the ADA claim only.

7.  The caption of the case is **AMENDED** as set forth above.  The clerk shall edit the docket to reflect the addition of Defendant Scharf and the correct spelling of each defendant's name.

8.  The clerk will attach a clean copy of the Daugherty Affidavit (Doc. 68-1) to Defendants' response (Doc. 67-1).

9.  The motions to unseal records (Docs. 38, 39, 75) are **DENIED**.

10.  The motions to prohibit the Defendants from having access to Newberry's medical and mental health records and to require them to produce medical records in third parties' custody (Docs. 41, 52, 71) are **DENIED**.

11.  The motion for leave to file 640 pages of records (Doc. 74) is **DENIED**. The documents (Docs. 74-1, 74-2, 74-3, 74-4) are **STRICKEN** from the record and will not be considered.

12.  The motion to prohibit Defendants from objecting to discovery requests and from working with defense counsel (Doc. 26) is **DENIED**.

13.  The motion for leave to serve additional discovery requests (Doc. 51) is **DENIED**.

14.   The motions for subpoenas to obtain MRI and X-ray images and all written reports concerning Newberry's medical care (Docs. 57, 57-5) are **GRANTED**.  The clerk will provide form subpoenas.  Newberry must complete them and submit them to the clerk on or before **January 20, 2021**.

15.   The motions for subpoenas directed to Disability Determination Services and to Newberry's mother (Docs. 57-12, 57-14) are **DENIED** subject to renewal on a showing of relevance.

16.   The other motions for subpoenas (Doc. 57-1 through 57-4, 57-6 through 57-11, 57-13, 77 through 77-21) are **DENIED**.

17.   The motion to compel (Doc. 69) is **DENIED**.

18.   Newberry's response (Doc. 64) to the Defendants' disclosure statement is **STRICKEN** from the record and will not be considered.

19.   The motion for leave to file an opening brief (Doc. 70) is **DENIED**.

20.   The motion for a summary judgment hearing (Doc. 79) is **DENIED** as the Court recommends denial of Newberry's motion for summary judgment.

21.   Defendants' motion for vacation of all deadlines (Doc. 49) is **DENIED**.

22.   Local Rule 56.1(a)(4) is **SUSPENDED** for both parties.

23.   The pretrial motions deadline of January 15, 2021, is **EXTENDED** to **February 22, 2021**.

24.   The February 12, 2021, alternative deadline for preparing and filing any

proposed final pretrial order, *see* Scheduling Order (Doc. 13) at 8 ¶ II(A)(7), is **EXTENDED** to **March 23, 2021**.

25.  In his submissions to the Court, Newberry will not address defense counsel or the Defendants in personal terms.

The Court also enters the following:

## RECOMMENDATION

1.  Correlative to paragraph 4 of the preceding Order, Newberry's motion to amend (Doc. 29) should be **DENIED IN PART**.  The request for leave to file the proposed second amended complaint (Doc. 29-2), excepting the ADA claim, should be **DENIED**.

2.  Newberry's request to add a claim against a transportation officer (Doc. 80) should be **DENIED**.

3.  Newberry's motions for preliminary injunctive relief (Docs. 25, 42) should be **DENIED**.

4.  Newberry's motions for restraining orders (Docs. 27, 35) should be **DENIED**.

5.  Newberry's motion for injunctive relief regarding Benadryl (Doc. 42) should be **DENIED**.

6.  Newberry's motion for injunctive relief regarding consultation with an outside expert (Doc. 53) should be **DENIED**.

7.  Newberry's motion for injunctive relief regarding COVID-19 (Docs. 37, 40, 55) should be **DENIED**.

8.  Newberry's motion for summary judgment (Doc. 56) should be **DENIED**.

**NOTICE OF RIGHT TO OBJECT**
**TO FINDINGS & RECOMMENDATION**
**AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may object to the Findings and Recommendations within 14 days.  *See* 28 U.S.C. § 636(b)(1).[11]  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Newberry must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."  Failure to do so may result in dismissal of the case without notice to him.

DATED this 7th day of January, 2021.

John Johnston
United States Magistrate Judge

---

[11]  This deadline allows a party to act within 14 days after the Findings and Recommendation is "served."  Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.